KITCHENS, Justice,
Dissenting.
¶ 26. The doctrine of res judicata is integral to the functioning of our legal system, but there are times when procedural bars must yield to the exigencies of justice. This case presents such an instance, literally a matter of life and death, and the Court should not forego this opportunity to remediate its prior improvi *1077 dence before the federal courts do. Because the previous opinion, which provides the basis for the majority’s denial of relief, is afflicted by significant factual and legal errors in its analysis of King’s claims regarding expert assistance, mental retardation, and mitigation evidence, I respectfully dissent.
Expert Assistance
¶ 27. As the majority notes, this Court affirmed the trial court’s denial of funding for a mental health expert, reasoning that King had failed to demonstrate a “substantial need” for such an expert. King v. State, 960 So.2d 413, 423 (Miss.2007) (quoting Holland v. State, 705 So.2d 307, 333 (Miss.1997)). The facts and applicable case law demonstrate the error of that holding.
¶ 28. Before resentencing, King moved for funding for experts to assist him with his Atkins claim. Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002). In support, he attached to his motion the 1984 trial testimony of Dr. Robin D. King, a psychologist who had assessed the defendant’s intelligence quotient (IQ) to be 71 and had testified that the margin of error would place Mack Arthur King in the mentally retarded range. King also attached the 1998 testimony of state psychologist, Dr. Michael Whelan. Dr. Whelan also concluded that King’s IQ was 71, but disagreed that King was mentally retarded. Finally, King attached an affidavit from Dr. Caroline Ev-erington, an expert in the field of mental retardation, which stated that further testing would be required to make an accurate Atkins determination. She noted that: the previously-administered tests were outdated; an evaluation of adaptive skills and developmental delays would be required; and that a psychologist would need to compile a complete social history. The trial court heard oral arguments and later denied the motion in a two-sentence order.
¶ 29. The seminal case regarding funding for psychiatric services for indigent criminal defendants is Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). Ake held that when an indigent defendant makes a preliminary showing that “his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense.” Id., 470 U.S. at 83, 105 S.Ct. 1087. On direct appeal, the State argued that Ake was limited to cases in which the defendant raised an insanity defense or the State planned to present psychiatric evidence at sentencing. King I, 960 So.2d at 420. Although this Court quoted Ake at length, it did not decide whether the State’s argument was valid. Id. at 420-21. What the Court did do was apply the “abuse of discretion” standard appropriate for reviews of funding denials for consultants or investigators, concluding, “[a]fter reviewing the evidence in the record ... we find that King has not shown the ‘substantial need’ required to obtain funds for an independent expert.” Id. at 423 (quoting Holland v. State, 705 So.2d 307, 333 (Miss.1997)).
¶ 30. King I did not fully develop the important interplay between Atkins and Ake. Under Ake, when a defendant’s mental condition is a critical factor, the Fourteenth Amendment’s due process guarantees require the State to provide an indigent criminal defendant with expert assistance. 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53. As Ake makes clear, “[t]his Court has long recognized that when a State brings its judicial power to bear on an indigent defendant in a *1078 criminal proceeding, it must take steps to assure that the defendant has a fair opportunity to present his defense.” Id. at 76, 105 S.Ct. 1087. Because, under Atkins, a successful showing that he is mentally retarded would foreclose the penalty of death, King most certainly demonstrated “a substantial need” to trigger his constitutional right to a mental health expert’s assistance.
Atkins Hearing
¶ 31. I also disagree with the determination that the procedure employed to address the issue of King’s mental retardation was sufficient to comply with Chase v. State, 873 So.2d 1013 (Miss.2004). This Court’s decision in King I misapprehended the underlying facts, resulting in a substantial injustice that must be corrected.
¶ 32. On direct appeal, this Court held that “[although Chase had not been decided at the time of King’s 2003 resentencing trial, we find that [the] hearing sufficiently complied with the procedures discussed in Chase.” King I, 960 So.2d at 427. In support of this holding, the Court asserted that “both sides presented expert testimony and other evidence regarding King’s mental retardation claim. After hearing all the evidence, which was substantial, the trial judge outlined the evidence that he had considered and gave his reasons for concluding that King was not mentally retarded.” Id. at 426 (emphasis supplied).
¶ 33. However, while evidence of mental retardation was presented during his resentencing hearing, the trial judge had concluded that King was not mentally retarded prior to trial. This ruling took place in chambers, following brief oral arguments, and without a full evidentiary hearing. During this proceeding, no witnesses were called to testify, and only one document was received into evidence. Chase requires that the “the matter should proceed as other evidentiary hearings on motions,” 873 So.2d at 1029 (emphasis added); but what actually occurred in this instance was nothing more than oral argument by counsel.
¶ 34. Chase also requires that “[t]he factors to be considered by the trial court are the expert opinions offered by the parties, and other evidence of limitations, or lack thereof, in the adaptive skill areas listed in the definitions of mental retardation approved in Atkins.” Id. Thereafter “the trial court shall place in the record its finding and the factual basis therefor.” Id. Yet, in the present case, there is no order or judgment that sets forth the factual basis for the court’s finding, and there is no formal recitation of the factors considered by the trial judge. The oral arguments were immediately followed by a declaration by the trial judge that King did not appear retarded, based on a 1971 report card. The judge pointed to a comment from King’s grade-school teacher that “He could do his work if he attended regularly.” The trial judge went on to say that his wife was a retired school teacher and that “these school teachers sometimes are real observant.”
¶ 35. This abbreviated pretrial proceeding failed to meet the due process requirements of Chase. King was not afforded a hearing on his mental retardation claim in satisfaction of the procedures outlined in Chase. The bulk of the proof relating to King’s mental retardation issues was presented to the jury as mitigating evidence, after the trial court already had determined that King was not mentally retarded. As a result, King was deprived of a meaningful Atkins hearing at which he could present the testimony of expert and lay witnesses, and cross-examine the State’s witnesses.
Mitigation Evidence
¶ 36. Finally, by holding that King is procedurally barred from raising the issue *1079 of mitigation evidence, this Court is ratifying a decision in direct conflict with holdings of the United States Supreme Court.
¶ 37. As on direct appeal, King argues that by preventing him from cross-examining the State’s witnesses on the circumstances of Mrs. Patterson’s murder, he was precluded from arguing relevant mitigating evidence. King I, 960 So.2d at 460. At resentencing, following the State’s examination of a pathologist who testified regarding Mrs. Patterson’s final moments, King attempted to cross-examine Sheriff Ray Griner on the absence of physical evidence connecting King to the murder scene. The State objected that such elicitation would amount to a relitigation of the trial’s guilt phase, to which King had no constitutional right under the United States Supreme Court’s decision in Oregon v. Guzek, 546 U.S. 517, 126 S.Ct. 1226, 163 L.Ed.2d 1112 (2006). On direct appeal, this Court agreed with the State, concluding that King was attempting to present evidence of “residual doubt.” King, 960 So.2d at 436-39.
¶ 38. In Guzek, the high court found no Eighth Amendment right to adduce evidence of actual innocence during the sentencing phase of a bifurcated murder trial. 546 U.S. 517, 126 S.Ct. 1226, 163 L.Ed.2d 1112. However, evidence of actual innocence is distinguishable from mitigation evidence, which is not prohibited. Writing for the six-justice majority, Justice Breyer explained that this sort of mitigating evidence is that “evidence that tend[s] to show how, not whether, the defendant committed the crime.” Id. at 524, 126 S.Ct. 1226 (emphasis included). Evidence of actual innocence, on the other hand, is “evidence directly inconsistent with the jury’s finding of guilt.” Id. The proper inquiry in the instant case, therefore, is whether the evidence offered by King would have shown how the crime was committed or whether the crime was committed.
¶ 39. Under Mississippi law, one need not have had his hands at the throat of the victim at the moment of death to be found guilty of murder. Likewise, although our capital punishment statute seeks to identify the worst of the worst, it leaves open the possibility of a death penalty for a defendant whose intent rises only to the level of a “contemplation] that lethal force be employed.” Miss.Code Ann. § 99-19-101 (Rev.2007).
¶40. The testimony sought by King straddles a fine line. Undoubtedly, King wanted to illustrate that his were not the hands that gripped Mrs. Patterson’s neck and held her beneath the water (in other words, that he did not personally commit the act of capital murder). But just as clearly, even if this were true, King still would be guilty of capital murder by virtue of his involvement in the burglary that resulted in Mrs. Patterson’s death. Said another way, he still would be guilty of the crime of capital murder. Therefore, because adducing such evidence in the penalty phase would not have undermined the guilty verdict, it would not have constituted “evidence directly inconsistent with the jury’s finding of guilt.” Guzek, 546 U.S. at 524, 126 S.Ct. 1226. In other words, the evidence “show[s] how, not whether, the defendant committed the crime.” Id. Specifically, the evidence would have been offered for the purpose of suggesting, not that King should not have been convicted, but rather that his absence from Mrs. Patterson’s immediate murder scene foreclosed a finding that he had acted heinously, atrociously, or cruelly. See Miss.Code Ann. § 99 — 19—101(5)(h) (Rev.2007).
¶ 41. Whether the jury would have accepted that argument is another question, of course. They might have concluded that King’s mere presence on the premises *1080 where the homicide was perpetrated, and his participation in the underlying felony of burglary, constituted an acquiescence to the killing, and that this behavior was in and of itself heinous, atrocious, or cruel. But that would have been, and should have been, properly left to the jury.
¶ 42. For the limited purpose of demonstrating how, not whether, King committed the crime of capital murder, he should have been permitted to adduce evidence showing that he was not present in the very room in which the accomplice strangled and drowned Mrs. Patterson, and thus he did not physically and personally participate in that awful process. This Court’s ruling to the contrary amounted to error under the U.S. Supreme Court’s ruling in Oregon v. Guzek.
¶ 48. King should have been afforded the opportunity to adduce evidence before the sentencing jury (in this case, not the same jury that had sat in the guilt phase of the bifurcated trial) that he was not even in the same room where Mrs. Patterson was slain, in order for those jurors to assess whether he had acted heinously, atrociously, or cruelly. The trial court’s ruling to the contrary deprived King of relevant, and likely valuable, mitigation evidence.
Conclusion
¶ 44. While recognizing and respecting the venerable doctrine of res judicata, I am unable to ignore the serious shortcomings of King I, and I lament our failure to seize upon today’s opportunity to rectify the momentous errors of that decision. Accordingly, I respectfully dissent.
DICKINSON, J., JOINS THIS OPINION IN PART.